## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

THOMAS RAY NEWSOME, JR.,

        Applicant,

vs.                                          Civil No. 08-1180 MCA/RHS

T.B. HATCH, et al.,

        Respondents.

### MAGISTRATE JUDGE'S SECOND AMENDED
### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

1.  THIS MATTER comes before the Court on consideration of Petitioner Thomas Ray Newsome, Jr.'s Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition"), filed December 22, 2008 **[Doc. 1]**, the amended proposed findings and recommended disposition of the undersigned ("APFRD") filed on January 18, 2011**[Doc. 28]**, Petitioner's Rule 72 Objections to Document 28 **[Doc. 29]** and Declaration in Support of Rule 72 Objections to Document 28 **[Doc. 30]**, both filed on February 3, 2011 (together, "Objections"), and Respondents' Response to Order to Clarify and Expand the Record ("Response"), filed March 18, 2011 **[Doc. 32]**.  Having considered the parties' submissions, the relevant authorities, and being otherwise advised in the premises, the Court further amends its proposed findings and recommendations as set forth below.

2.  Mr. Newsome is confined pursuant to the Judgment, Sentence and Commitment, filed in New Mexico state court on June 21, 2004 in the Second Judicial District, County of Bernalillo.  (See Ex. A, attached to Answer, filed Apr. 1, 2009 **[Doc. 14]**).[1]  Following a jury

_____

[1]Unless otherwise indicated, all exhibits referenced in this document are attached to Respondent's Answer.

trial, Mr. Newsome was convicted of: (1) Second Degree Murder (Firearm Enhancement), a 2d degree felony, (2) Aggravated Assault (Deadly Weapon) (Firearm Enhancement), a 4th degree felony, and (3) Unlawful Carrying of a Deadly Weapon, a petty misdemeanor.  (See id.).  Mr. Newsome was sentenced to serve "a total term of incarceration of sixteen (16) years."  (Id. at 2). Mr. Newsome was also ordered to complete two (2) years of parole following his release.  (See id.).

3.  Mr. Newsome, proceeding *pro se*, alleges the following grounds for relief in his federal petition:

I.  Ineffective Assistance of Counsel (Conflict of Interest);

II.  Ineffective Assistance of Counsel (at Trial);

III.  Ineffective Assistance of Counsel (on Appeal);

IV.  Prosecutorial Misconduct; and

V.  Denial of a Fair Trial (Judicial Abuse of Discretion).

(See Petition).  Under each category of the above grounds, Petitioner alleges a voluminous number of supporting facts and sub-claims, resulting in a Petition totaling 61 pages in length.

4.  In its APFRD, the undersigned found that "all of the claims asserted in Mr. Newsome's federal Petition [except one] are procedurally defaulted," and recommended that they be dismissed on that basis.  (APFRD at 5).  The undersigned also recommended that Petitioner's remaining claim of ineffective assistance of trial counsel for failure to subpoena a witness be denied on its merits.  (APFRD at 5-6).

5.  In his Objections, Mr. Newsome challenged the Court's finding that many of his claims were procedurally defaulted, and the Court directed the Government to respond to Mr. Newsome's objection on this issue.  In its Response, the Government conceded that "the

acceptance and review by the New Mexico Supreme Court [("NMSC")] *forecloses and precludes any assertion of procedural default by Respondents*."  (Response at 3-4 ¶ 12 (emphasis added)).  Because Petitioner's claims appear to be exhausted and Respondents concede that his claims are not procedurally defaulted, the Court will proceed to address the merits of Petitioner's claims.

### *Standard of Review*

6.  The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The AEDPA provides that where a state court has adjudicated a claim on the merits, a petitioner is entitled to habeas relief in federal court "only if he can establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts[2] in light of the evidence presented in the State court proceeding."  Gipson v. Jordan, 376 F.3d 1193, 1195-96 (10th Cir. 2004) (quoting 28 U.S.C. § 2254(d)(1), (2)) (internal quotation marks omitted).

7.  If the state court did not reach the merits of a claim, and the claim is not otherwise procedurally barred, AEDPA deference does not apply and this Court addresses the claim *de novo*.  See id. at 1196 (citing Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999).  However, the Supreme Court of the United States held "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S.Ct. 770, 785 (2011); see also Gipson, 376 F.3d at 1196 (citing Aycox, 196 F.3d

---

[2]State court factual findings are presumed correct, absent clear and convincing evidence to the contrary.  § 2254(e)(1).

at 1177) (holding that a state court reaches a decision on the merits where "there is no indication suggesting that the state court did *not* reach the merits of a claim . . . even when it fails either to mention the federal basis for the claim or cite any state or federal law in support of its conclusion").

I - *Claim of ineffective assistance of counsel due to conflict of interest*

8.  The Sixth Amendment encompasses "a correlative right to representation [by counsel] that is free from conflicts of interest."  <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981).  In order to succeed on a conflict of interest claim, Petitioner must show that "a conflict of interest actually affected the adequacy of his representation."  <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 349 (1980).  A conflict of interest under <u>Sullivan</u> "results *if counsel was forced to make choices advancing other interests to the detriment of his client*."  <u>United States v. Alvarez</u>, 137 F.3d 1249, 1252 (10th Cir. 1998) (emphasis added).  "Unsubstantiated and vague allegations are insufficient to establish an actual conflict of interest."  <u>Castro v. Ward</u>, 138 F.3d 810, 821 (10th Cir. 1998).

9.  Petitioner apparently claims that a conflict of interest, based on a total breakdown in communication, rendered his trial counsel, Ms. Brusuelas, ineffective.  In support of this claim, Petitioner alleges the following:

> (1) counsel inflicted a near-total information blackout on the case; (2) counsel refused to come to the jail because the atmosphere "depressed her"; (3) counsel refused to communicate information on case status, hearings, tactics, witnesses, state's evidence, plea options, preparation for direct and cross-examination; (4) counsel refused to explain why she broke two appointments with Ms. Johnson and never re-scheduled the appointments; (5) counsel refused to explain why she refused to send an investigator to talk to Petitioner after saying she would do so; (6) counsel refused to let Petitioner see the pre-sentence report; (7) counsel claimed Petitioner threatened her, but two security guards who were present in the jury room will testify to the contrary; (8) Petitioner fired counsel; counsel acknowledged being fired and the trial judge was notified of counsel's firing; (9) counsel did not inform trial judge of firing due to fear of lost income; (10) counsel acted adversely to Petitioner after her dismissal to protect her reputation,

4

exposure to malpractice and bar discipline; (11) efforts to file second motion for
substitution were rebuffed; trial judge never held hearing and no substitution of
counsel was made; (12) there was a pattern of refusing to file Petitioner's
motions; (13) neither Ms. Brusuelas nor the District Attorney responded to
several of Petitioner's motions regarding dismissal of Ms. Brusuelas; (14) Jeff
Buckles visited Petitioner in jail and said counsel claimed to have "patched things
up" with Petitioner; (15) Mr. Buckles said counsel told him that she and the
District Attorney and Judge Knowles met; however, when Petitioner sought
information regarding this "secret meeting", it was refused; (16) on June 22,
2004, Petitioner wrote to Ms. Brusuelas that "you have a conflict of interest in
preparing the Docketing Statement," yet over Petitioner's objections, the trial
judge ordered Ms. Brusuelas to prepare the appellate Docketing Statement; (17)
Ms. Brusuelas conspired with Sue Hermann of the Public Defender appellate
division to enter into a "fabricated stipulation" in which Ms. Hermann signed the
Docketing Statement; (18) This fraud allowed Ms. Brusuelas to cover up her
conflict of interest and ineffective assistance; (19) Petitioner explicitly directed
Ms. Brusuelas to address her ineffective assistance on appeal and she refused;
(20) the trial judge was informed that Ms. Brusuelas concealed her dismissal from
the court; (21) Ms. Brusuelas stole Petitioner's expensive trial clothes; (22) the
trial judge knew that Petitioner filed a disciplinary complaint 4 ½ months before
Ms. Brusuelas and Ms. Hermann prepared the Docketing Statement; (23)
appellate counsel knew of Ms. Brusuelas' conflict and was told to address the
conflict by Petitioner; (24) Petitioner objected to the state habeas corpus judge's
invitation to Ms. Brusuelas to "respond" to the petition on the conflict issue; (25)
Ms. Brusuelas never served her response on Petitioner and she denied hiding the
conflict from the trial judge; (26) after April 16, 2003, when Petitioner first saw
Ms. Brusuelas at the jail, Petitioner never talked to another attorney, except at
arraignment, when Ms. Brusuelas did not show and a "duty" public defender
handled that chore; (27) Petitioner never met with Ms. Brusuelas in the jury room
on the first day of trial, but did on May 13, 2004 at oral sentencing; (28)
Petitioner sat in the jury box on the first day of trial before voire dire; and (29)
Ms. Brusuelas claimed the trial judge never addressed a conflict of interest for a
variety of reasons (e.g., Petitioner dropped the issue, Petitioner could have asked
the judge, etc.).

(See Petition at 1-14 **[Doc. 1-1]**).

10.  In addressing the conflict of interest claim asserted in Petitioner's state habeas

corpus petition, the Honorable Carl J. Butkus, District Judge, Div. XVI, reviewed the state court

file, including the transcript of a hearing held on February 18, 2004 (five days before Petitioner's

criminal trial), a partial transcript of a hearing held on February 23, 2004 (first day of

5

Petitioner's criminal trial), and Judge Knowles' "non-official court file."  (See Order Denying Remainder of "Petition for a Writ of Habeas Corpus" ("Order #2", Ex. Z)).  Having reviewed these materials, Judge Butkus was "not prepared to make a finding that Judge Knowles was aware of an alleged irreconcilable conflict." (Order #2 at 8).  Moreover, even assuming that Judge Knowles was aware of the issue, Judge Butkus concluded "there is no showing that a decision was [in]voked" on this issue during the course of trial.  (Order #2 at 9).[3]  Finding that no decision had been invoked on the conflict issue, Judge Butkus concluded that Petitioner's state habeas claim on the issue was not properly before the court and should be denied.  (See Order #2 at 9).

11.  Judge Butkus further found that even if "the issue is properly before the Court . . . Newsome's Petition should, nevertheless, be denied." (Order #2 at 9).  Citing his "extensive review" of the record, Judge Butkus was "not satisfied that there has been a sufficient showing of an irreconcilable conflict, much less one that resulted in a total lack of communication which prevented an adequate defense." (Order #2 at 10).  Petitioner fails to show that the state court's decision on this claim was contrary to, or involved an unreasonable application of, clearly established Federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  Moreover, even applying a *de novo* standard of review, Petitioner fails to establish an actual conflict of interest as set forth in Sullivan and Alvarez.  Thus, the Court recommends that Petitioner's conflict of interest claim be denied.

---

[3]In reaching this finding, Judge Butkus noted that the transcript of the hearing held on February 18, 2004 lacked any discussion of a conflict with counsel, and found no "suggest[ion] that anything was said about it during the course of trial." (Order #2 at 8-9). Judge Butkus also noted  that Petitioner "has shown himself to be a literate and forceful advocate . . . . [and] an experienced litigator."  (Order #2 at 9).

### *General Rule for Evaluating Ineffective Assistance of Counsel*

12.  When a defendant cannot point to specific facts to substantiate a conflict of interest claim, he may attack his counsel's assistance through the general rule of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>Mickens v. Taylor</u>, 535 U.S. 162, 166 (2002).  Under the now familiar two-part <u>Strickland</u> standard for judging ineffective assistance, a habeas petitioner is entitled to relief if he can show by a preponderance of the evidence the following:

> (1) trial counsel was deficient, i.e., "counsel's representation fell below an objective standard of reasonableness";
> *and*
> (2) the deficiency prejudiced his defense, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

<u>Strickland</u>, 466 U.S. at 688; <u>accord</u> <u>Sperry v. McKune</u>, 445 F.3d 1268, 1274-75 (10th Cir. 2006).

13.  "Judicial scrutiny of counsel's performance must be highly deferential."  <u>Strickland</u>, 466 U.S. at 689.  "There is a strong presumption that counsel's performance falls within the wide range of professional assistance[;] the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  <u>Boyle v. McKune</u>, 544 F.3d 1132, 1137-38 (10th Cir. 2008) (citations omitted).

14.  In order to establish prejudice, Petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  <u>Strickland</u>, 466 U.S. at 688.[4]  Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466

---

[4]"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  <u>Strickland</u>, 466 U.S. at 691.

U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the

outcome."  Id.  "That requires a 'substantial,' not just 'conceivable,' likelihood of a different

result."  Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011) (citing Harrington v. Richter, 131

S.Ct. 770, 791 (2011)).

    *II - Claim of ineffective assistance of counsel at trial*

  15.  Mr. Newsome's Petition lists numerous grounds in support of his claim that counsel

rendered ineffective assistance at trial.  Petitioner alleges that his counsel erred in the following

ways:

> (1) failure to investigate/interview defense witnesses; (2) failure to
> investigate/call expert witnesses; (3) failure to subpoena defense documents; (4)
> failure to file motions to suppress or object to prejudicial exhibits; (5) failure to
> file certain motions in limine; (6) failure to effectively impeach prosecution
> witnesses; (7) failure to prepare Petitioner for direct examination and cross-
> examination; (8) failure to file a motion to dismiss the indictment; (9) failure to
> file a motion to exclude because of destruction of evidence; (10) failure to secure
> a "speaking" view of scene; (11) failure to file a motion to dismiss based on
> speedy trial ground; (12) failure to act diligently on client's behalf; (13) failure to
> communicate with client; (14) failure to present effective closing argument; (15)
> failure to submit proper jury instructions and object to defective jury instructions;
> (16) failure to interview jury after verdict; (17) failure to present mitigating
> evidence at sentencing; (18) failure to preserve appellate issues; (19) cumulative
> impact of ineffective assistance; (20) fundamental error; and (21) right to
> evidentiary hearing.

(Attachment "B" to Petition at 1-20, **[Docs. 1-1**, **1-2]**).  Petitioner's claim of ineffective

assistance of counsel at trial was asserted in his state habeas petition and considered and rejected

by the state habeas court (Judge Butkus).  (See Order Denying in Part Petition for a Writ of

Habeas Corpus; Inviting Further Limited Briefing" ("Order #1", Ex. R)).

  16.  Judge Butkus initially observed that virtually all of the reasons alleged by Petitioner

in support of his claim of ineffective assistance of trial counsel "appear to constitute second-

guessing of trial counsel" and noted that "[d]isagreements over tactics and strategy generally do

not constitute ineffective assistance of counsel." (Order #1 at 12-13). The state habeas court

further noted that the bulk of Petitioner's claims consist of "conclusory arguments" unsupported

by evidence. (Order #1 at 13). This Court concurs with the state habeas court's characterization

of Petitioner's claims.

   (1)    *failure to investigate/interview/subpoena defense witnesses*

   17.  In his Petition, Mr. Newsome alleges that his trial counsel erred in failing to

investigate, interview, subpoena or call the following persons as defense witnesses:

> (a) Thomas "Keeper" Rubio; (b) Joel Laviolette; (c) Ann Johnson and Greg Paul;
> (d) Veterans Administration physicians; (e) Lovelace Medical Center physicians;
> (f) records custodian at jail; (g) Rebecca Sitterly, Gerald Cole and Art Encinias;
> (h) Robert Johnson, Ex. Dir. Of N.M. Foundation for Open Government; (i)
> Steven Schonberg; (j) James Chavez and Melchior Savarese; (k) APD Officer
> "Gehu"; (l) APD detective or officer; (m) owner of Albuquerque Pawn Shop; and
> (n) Ed Byletas.

(See Attachment "B" to Petition at 1-4 **[Doc. 1-1]**; CM/ECF page 15-18).

   18.  On direct appeal, Petitioner argued that his trial counsel was ineffective for failing to

subpoena or call MBX employee, Mr. Laviolette, as a witness. Petitioner contends that Mr.

Laviolette's testimony would have corroborated Mr. Newsome's testimony that the decedent

"was [the] first aggressor who attacked Mr. Newsome with a 'karate jump-kick'[.]" (See

Attachment "B" to Petition at 1 **[Doc. 1-1]**; CM/ECF page 15).

   19.  The New Mexico Court of Appeals ("NMCA") considered Mr. Newsome's

allegation of ineffective assistance and concluded that this issue was "not viable[5] . . . . [and]

has no merit." (Memorandum Opinion at 2, Ex. M). The NMCA noted that "[t]he calling of

---

   [5]"Viable issues are those that are colorable, or arguable, as opposed to those devoid of
any merit." (Memo Opin at 2, Ex. M (citing State v. Moore, 109 N.M. 119, 129, 782 P.2d 91,
101 (Ct.App. 1989))."

witnesses is a matter of trial tactics and strategy that will not be second-guessed by this Court."
(Id. (citing State v. Stenz, 109 N.M. 536, 539, 787 P.2d 455, 458 (Ct.App. 1990)).

     20.  Petitioner has failed to establish that a decision not to call Mr. Laviolette as a witness
was unsound.  Even assuming error on the part of trial counsel in failing to subpoena Mr.
Laviolette, such error was not prejudicial.  At trial, Mr. Newsome testified as to his version of
events.  The NMCA agreed that the decedent "rushed at [Mr. Newsome] and threatened him" in
the MBX building.  (Notice Proposed Summary Disposition at 4, Ex. K).  The NMCA further
observed that this "is not a case where [Mr. Newsome's] version of events conflicts with that of
the state's witnesses."  (Id. at 5).  In light of the evidence presented at trial, it is unlikely that Mr.
Laviolette's purported testimony would have undermined the strength of the case against Mr.
Newsome or had more than a minimal effect on the jury.  Accordingly, because counsel's failure
to subpoena Mr. Laviolette was not prejudicial, Mr. Newsome's claim of ineffective assistance
on this basis should be denied.

     21.  On state habeas review, Judge Butkus noted Petitioner's "acknowledg[ment] that
Brusuelas or her investigator, Blyotas, investigated, interviewed witnesses and took statements."
(Order #1 at 13).  In denying Petitioner's claim, Judge Butkus similarly found that Mr.
Newsome's allegations express disagreement with trial counsel's "apparent decisions made as to
*who* to interview and *how* to conduct the interview . . . . [and reiterated that] [s]uch decisions are
generally decisions which rest in the first instance with trial counsel."  (Order #1 at 13 (emphasis
added)).

     22.  Trial counsel's "strategic choices made after thorough investigation of law and facts
relevant to plausible options are virtually unchallengeable; and strategic choices made after less
than complete investigation are reasonable precisely to the extent that reasonable professional

judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91.  "Generally,

the decision whether to call a witness rests within the sound discretion of trial counsel."

DeLozier v. Sirmons, 531 F.3d 1306, 1324 (10th Cir. 2008) (quoting Jackson v. Shanks, 143 F.3d

1313, 1320 (10th Cir. 1998)).

      23.  Applying the dictates of both § 2254(d) and Strickland, this Court's review of the

New Mexico state court decisions denying Petitioner's claim is "doubly deferential."  Pinholster,

131 S.Ct. at 1403 (citations omitted).  Under these standards, Petitioner has not demonstrated

that it was necessarily unreasonable for the state courts to conclude that Mr. Newsome failed to:

(1) overcome the strong presumption that his trial counsel was competent, or (2) show that any

deficient conduct of trial counsel resulted in prejudice.  Moreover, this Court reaches the same

conclusion, regardless of whether Petitioner's claim is considered *de novo* or whether the state

court's decision is afforded AEDPA deference.  Accordingly, Petitioner's claim for habeas relief

on this ground should be denied.

      *(2)    failure to investigate, interview, retain , subpoena or call expert witness*

      24.  In his Petition, Mr. Newsome alleges that trial counsel erred in failing to investigate,

interview, subpoena or call the following expert witnesses: (a) clinical psychologist; (b) martial

arts expert; (c) "rapid fire syndrome" expert; (d) firearms expert; and (e) ballistics-gunpowder

expert.  (See Attachment "B" to Petition at 4-5 **[Doc. 1-1]**; CM/ECF page 18-19).

      25.  In denying this claim on state habeas review, Judge Butkus observed that Mr.

Newsome "[s]peculat[ed] as to what certain experts might say, assum[ed] that what they might

say would be favorable to him and assum[ed] that their testimony would be otherwise

admissible."  (Order #1 at 13-14).  The state habeas court noted that the decision "as to what, if

any experts to retain in a given case generally rest[s] in the first instance with trial counsel."

(Order #1 at 14 (citing State v. Harrison, 129 N.M. 328, 7 P.3d 478 (2000); other citation omitted).

26.  This Court finds that Petitioner's allegations regarding this claim are too conclusory and/or speculative to meet the standards for establishing either deficiency of counsel or prejudice.  Petitioner fails to meet his burden of showing that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established Federal law, or was based on an unreasonable determination of the facts.  Thus, Petitioner's claim for habeas relief on this ground should be denied.

       *(3)*     *failure to subpoena defense documents*

27.  Petitioner alleges that trial counsel was ineffective in failing to subpoena any defense documents.  In denying this claim on state habeas review, Judge Butkus observed that Petitioner "Newsome speculates that certain documents, if offered at trial, would have had a certain effect favorable to him and would have otherwise been admissible."  (Order #1 at 14).  Judge Butkus further noted that Petitioner "appears to acknowledge that such evidence was cumulative." (Order #1 at 14).  The state habeas court explained that "the decision as to what documents to subpoena to trial (if it was necessary to subpoena documents at all) generally rests in the first instance with trial counsel."  (Order #1 at 14).

28.  Petitioner claims that various "[m]edical, education, military, police, and pawn shop records would have supported [his trial] testimony."  (Attachment "B" to Petition at 6 **[Doc. 1-1]**; CM/ECF page 20).  Petitioner's allegations regarding this claim are too conclusory and/or speculative to meet the standards for establishing either deficiency of counsel or prejudice. Because Petitioner fails to demonstrate that the state court erred in denying this claim, Petitioner's claim for habeas relief on this ground should be denied.

12

*(4),(5),(9)*  *failure to file various motions to suppress/exclude and motions in limine*

29.  Petitioner alleges that his trial counsel erred in failing to file motions to suppress, object to, and/or prevent the introduction of the following "highly prejudicial exhibits[:]" (a) autopsy photographs of Mr. Hunter's uninjured face; (b) tapes of "911" calls; (c) facial photograph of Mr. Newsome in custody at the scene; (d) conflicting aerial photographs and diagrams of the intersection of Yale and Central in Albuquerque; and (e) diagram of the MBX floorplan.  (Attachment "B" to Petition at 6-8 **[doc. 1-1]**; CM/ECF page 20-22).  Petitioner alleges that his trial counsel was ineffective in failing to file a motion in limine "to prevent repeated references by the prosecution to Hunter as a 'victim' . . . . [and] to prevent the prosecutor from questioning Mr. Newsome about his efforts to 'retreat.'"  (Attachment "B" to Petition at 8 **[doc. 1-1]**; CM/ECF page 22).  Petitioner apparently alleges that counsel erred in failing to move for the exclusion of certain photographs of display boxes at MBX.  (Attachment "B" to Petition at 3 **[Doc. 1-2]**; CM/ECF page 5).

30.  In denying these claims on state habeas review, Judge Butkus noted that "exhibits of the nature described are frequently and routinely admitted at trials."  (Order #1 at 14).  Judge Butkus also noted that "[r]eferences to a 'victim' or 'alleged victim' or some other term are routinely made during trials[,]" and found that even if counsel "made no effort to preclude or limit the use of the term . . . [such conduct does not] amount[] to ineffective assistance."  (Order #1 at 15).  Judge Butkus found it reasonable for the prosecutor to question Mr. Newsome "concerning his efforts to avoid confrontation and altercation."  (Order #1 at 15).  The state habeas court concluded that, in any event, decisions regarding whether, and in what manner, to oppose or object to evidence generally rest in the first instance with trial counsel.

31.  Petitioner's allegations regarding these claims are too conclusory and/or speculative

13

to meet the standards for establishing deficiency of counsel and, in particular, prejudice.  See,
e.g., Moore v. Gibson, 195 F.3d 1152, 1167 (10th Cir.1999) (holding that habeas relief is not
available unless an evidentiary "error, if any, was so grossly prejudicial that it fatally infected the
trial and denied the fundamental fairness that is the essence of due process") (quotation omitted).
Petitioner fails to demonstrate that the state court erred in denying these claims, therefore, his
claim for habeas relief on these grounds should be denied.

> *(6)    failure to effectively impeach prosecution witnesses*

32.   Petitioner alleges that his trial counsel erred in failing to effectively impeach
prosecution witnesses regarding the following issues: (a) "blind" position of witnesses; crawling
on the floor; and "waking up" from shock; (b) claim of a "rapid fire of shots"; (c) the "break"
between shots fired; (d) whether Mr. Newsome "stood over" Mr. Hunter; (e) Mr. Hunter's calls
for help; (f) Taylor and Lytles' collaboration; (g) witness demeanor; (h) Mr. Hunter did not die
in Taylor's arms; (i) MBX employee Cecile Cody's grudge against Mr. Newsome; and (j)
eliciting damaging material from an APD detective.  (See Attachment "B" to Petition at 9-10
**[Doc. 1-2]**; CM/ECF page 1-2).

33.   In denying this claim on state habeas review, Judge Butkus noted that "from
Newsome's argument . . . much of what he may be contending is impeachment evidence was
presented in one way, shape or form . . . . [and] [i]n any event, the decision as to whether to use
impeachment evidence generally rests in the first instance with trial counsel as does the proper
way to use it."  (Order #1 at 15).  The Tenth Circuit "has repeatedly stated that 'counsel's
decisions regarding how best to cross-examine witnesses presumptively arise from sound trial
strategy.'"  DeLozier, 531 F.3d at 1326 (quoting Richie v. Mullin, 417 F.3d 1117, 1124 (10th Cir.
2005)).

14

34.  In this case, Petitioner has failed to overcome the presumption that his counsel's trial strategy was sound, and he has not shown that any deficiency in counsel's conduct resulted in prejudice.  Moreover, because Petitioner does not demonstrate that the state court erred in denying this claim, Petitioner's claim for habeas relief on this ground should be denied.

(7)  *failure to prepare defendant for direct and cross-examination*

35.  Petitioner alleges that his trial counsel failed to prepare him for direct and cross-examination in the following ways: (a) failed to provide Petitioner with certain discovery materials (e.g., photographs of the scene, autopsy, diagrams of the intersection, audiotapes of witness statements, etc.); (b) failed to introduce evidence of Petitioner's physical condition during direct examination; (c) did not call the jury's attention to photographs of Mr. Hunter's hands; and (d) did not explain to the jury that Petitioner acted in self-defense against Mr. Hunter's "wild assault."  (Attachment "B" to Petition at 11-12 **[Doc. 1-2]**; CM/ECF page 3-4).

36.  In denying this claim on state habeas review, Judge Butkus found that Petitioner's claim did not focus on trial preparation, but rather complained that counsel "did not give him exactly what he wanted and in the format he wanted."  (Order #1 at 16).  Judge Butkus noted that Petitioner already possessed some of the knowledge that he purportedly sought, that "leading questions are generally improper on direct examination[,]" and "the choice of evidence to be introduced, the manner of its introduction and use and the form of questioning generally rests in the first instance with trial counsel."  (Order #1 at 16).

37.  This Court agrees with the state habeas court's description of Petitioner's claim.  For example, Petitioner testified at trial that he acted in self defense.  Moreover, Petitioner's allegations are far too speculative and conclusory to establish either that his counsel was constitutionally deficient or that such deficiency resulted in prejudice.  Because Petitioner fails

15

to show that the state court erred in denying this claim, his claim for habeas relief on this basis should be denied.

> (8),(11)    *failure to file motion to dismiss the indictment and motion to dismiss on speedy trial grounds*

38.   Petitioner alleges that his trial counsel was ineffective for failing to file a motion to dismiss the indictment.  This Court agrees with the state habeas court's conclusion that the bulk of Petitioner's allegations regarding this claim appear "unrelated to any issue regarding dismissal of an indictment and [are] unsupported."  (Order #1 at 16).  The state habeas court, having reviewed "all the materials presently before it," found "no apparent basis for seeking dismissal of the indictment."  (Order #1 at 16).  Indeed, Petitioner neither alleges nor shows that the state trial court would have granted a motion to dismiss the indictment had his trial counsel filed one.

39.   Petitioner also alleges that his trial counsel was ineffective for failing to file a motion to dismiss for being denied a speedy trial.  In denying this claim, the state habeas court noted that the Grand Jury Indictment was filed on April 21, 2003 and trial began in late February of 2004.  (Order #1 at 17).  Judge Butkus determined that Petitioner's claim was without merit because the approximately 10 (ten) month period between indictment and trial was "well within the 15 (fifteen) month period for arguably presumptive prejudice in complex cases and less than the twelve (12) month period for arguably presumptive prejudice in cases of intermediate complexity."  (Order #1 at 17).

40.   In Barker v. Wingo, the Supreme Court of the United States established the analysis for Sixth Amendment speedy trial cases.  407 U.S. 514 (1972).  In accordance with Barker, a speedy trial claim is assessed by balancing: (1) the length of delay, (2) the reason for delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced

16

the defendant.  Id. at 530.  However, "[u]ntil there is some delay which is presumptively

prejudicial, there is no necessity for inquiry into the other factors that go into the balance."

Barker, 407 U.S. at 530 (cited in United States v. Cone, 310 Fed.Appx. 212, 216 (10th Cir. Aug.

20, 2008) (not selected for publication)).  "In Doggett v. United States, the Supreme Court noted

that depending on the nature of the charges, the lower courts have generally found delay

approaching one year to be presumptively prejudicial, thereby triggering the Barker balancing

test."  Cone, 310 Fed.Appx. at 216 (citing Doggett, 505 U.S. 647, 652 n.1 (1992)).

41.  The state habeas court addressed Petitioner's apparent claim that his Sixth

Amendment speedy trial right was violated and found that it had no merit.  Because Judge

Butkus determined that the 10 (ten) month delay in this case was not presumptively prejudicial,

no further analysis was required under Barker.  Having failed to show that his speedy trial right

was violated, Petitioner cannot show that he was prejudiced by counsel's alleged failure to file a

motion asserting that right.  Petitioner fails to meet his burden of showing that the state court's

denial of this claim was contrary to, or involved an unreasonable application of, clearly

established Federal law, or was based on an unreasonable determination of the facts.

Accordingly, Petitioner's claim for habeas relief on this ground should be denied.

   *(10)    failure to secure a "speaking" view of scene*

42.  Petitioner contends that his counsel erred in failing to object to the jury's "silent"

view of the scene, because the jury "received no explanation of the significance of the scenes

and items viewed."  (Attachment "B" to Petition at 14 **[Doc. 1-2]**; CM/ECF page 6).  In denying

this claim on state habeas review, Judge Butkus noted that "[t]he nature and scope of a jury view

is within the control of the Court . . . . [and the jury's view] was susceptible to further

explanation at trial."  (Order #1 at 17).

17

43.  Petitioner's allegations are far too speculative and conclusory to establish either that his counsel was constitutionally deficient or that such deficiency resulted in prejudice.  Because Petitioner fails to show that the state court erred in denying this claim, his claim for habeas relief on this basis should be denied.

*(12), (13)        failure to communicate with client and act diligently on client's behalf*

44.  Petitioner alleges that his trial counsel impeded, rather than expedited the prosecution, "utterly stonewalled Mr. Newsome's request that she tell him what she did, when, how, and why . . . . did not provide Mr. Newsome with advice on the nature or extent of the charges against him, nor of potential options . . . . [and] refused to provide answers" to Petitioner's requests for information.[6]  (Attachment "B" to Petition at 14-15 **[Doc. 1-2]**; CM/ECF page 6-7).

45.  In denying this claim on state habeas review, Judge Butkus found it "clear from the Petition and the materials otherwise available to the Court that there was communication between [trial counsel] Brusuelas and/or her office and Newsome[,]" described Petitioner's arguments as "generalized and self-serving[,]" and determined that no further inquiry on this claim was warranted.  (Order #1 at 18).  Thus, the state habeas court apparently found that Petitioner's allegations failed to establish deficient conduct on the part of his trial counsel.

46.  This Court further notes that, even assuming Petitioner's trial counsel was deficient in failing to communicate, Petitioner does not allege, much less demonstrate, that such deficiency resulted in prejudice.  Because Petitioner fails to demonstrate that the state court erred in denying these claims, Petitioner's claims for habeas relief on these grounds should be denied.

_____

[6]The Court notes that Petitioner's allegation that trial counsel failed to communicate was previously addressed in the context of his claim of conflict of interest.  See Section I, supra.

18

*(14)    failure to present effective closing argument*

47.   Petitioner alleges that trial counsel rendered ineffective assistance in her closing argument because she "never took the jury through the incident of 8 April 2003 step-by-step to show the jury why Mr. Newsome acted in <u>self-defense</u>." (Attachment "B" to Petition at 16 **[Doc. 1-2]**; CM/ECF page 8 (emphasis in original)).  In denying this claim on state habeas review, Judge Butkus described Petitioner's argument as "terse and perfunctory" and concluded that "the nature and scope of closing argument generally rest in the first instance with trial counsel." (Order #1 at 18).

48.   This Court finds that Petitioner's allegations regarding these claims are too conclusory and/or speculative to meet the standards for establishing either deficiency of counsel or prejudice.  Because Petitioner fails to demonstrate that the state court erred in denying these claims, Petitioner's claim for habeas relief on this ground should be denied.

*(15)    failure to submit proper jury instructions and object to defective jury instructions*

49.   Petitioner alleges that his trial counsel erred in failing to submit or object to jury instructions concerning the following issues: (a) reckless and careless driving; (b) self-defense (specifically, "the law of threats" and "the right to arm oneself"); (c) omission of essential element of "unlawfulness" (specifically, second degree murder, jurisdictional error, voluntary manslaughter, contradictory/confusing instructions, provocation, and aggravated assault); (d) involuntary manslaughter; (e) "imperfect" self-defense; (f) defense of "justification"; (g) burden of proof; and (h) cumulative error.  (Attachment "B" to Petition at 16-18 **[Doc. 1-2]**; CM/ECF page 8-10).

50.   On state habeas review, Judge Butkus found Petitioner's apparent argument that trial counsel erred in failing to request instructions on reckless or careless driving "frivolous."  (Order

19

#1 at 18). Judge Butkus pointed out that the NMCA had previously considered and rejected Petitioner's argument that the jury should have received an instruction on "duress." (Order #1 at 19 & n.14). Judge Butkus also found no showing of ineffective assistance on Petitioner's claim that trial counsel erred in failing to request an instruction on involuntary manslaughter as a lesser included offense.[7] (Order #1 at 19). Having "reviewed the instructions given to the jury (RP 73 - 100) in light of the offenses submitted to the jury and Newsome's arguments[,]" Judge Butkus was "not persuaded that error, much less prejudicial error, exists in this case." (Order #1 at 19).

51. This Court finds that Petitioner fails to establish either deficiency of counsel or prejudice regarding this claim. Because Petitioner fails to demonstrate that the state court erred in denying this claim, Petitioner's claim for habeas relief on this ground should be denied.

    *(16)    failure to interview jury after verdict*

52. Petitioner alleges that trial counsel "fled the courthouse after the jury's verdict" without interviewing the jurors, "which prejudiced Mr. Newsome in obtaining valuable information about the jury's reasons for its decision that could have been very useful in" subsequent proceedings. (Attachment "B" to Petition at 18-19 **[Doc. 1-2]**; CM/ECF page 10-11). In denying this claim, the state habeas court found Petitioner's argument both unsupported and frivolous. (Order #1 at 19). This Court agrees. Petitioner's speculative and conclusory allegations fail to establish either deficiency of counsel or prejudice and are not sufficient to warrant habeas relief. See Humphreys v. Gibson, 261 F.3d 1016, 1022 n. 2 (10th Cir. 2001)).

---

[7]The failure to instruct a jury on a lesser included offense is not a ground for granting federal habeas relief in a noncapital case. See Chavez v. Kerby, 848 F.2d 1101, 1103 (10th Cir. 1988). In a capital case, the jury must be instructed in at least one lesser included noncapital offense if the evidence supports such an instruction. See Beck v. Alabama, 447 U.S. 625, 627 (1980); see also James v. Gibson, 211 F.3d 543, 555 (10th Cir. 2000) (citations omitted).

Accordingly, this ineffective assistance of counsel claim should be dismissed.

       *(17)   failure to present mitigating evidence at sentencing*

     53.  Petitioner alleges that trial counsel rendered ineffective assistance at sentencing in failing to present evidence of, *inter alia*, Petitioner's: (a) educational, military, or professional background; (b) medical disabilities; (c) experience as the victim of violent crime; (d) activism in freedom of information issues; (e) lack of significant prior criminal history; (f) mental or emotional disturbance; (g) likelihood of rehabilitation; (h) cooperation with authorities; and (i) age. (Attachment "B" to Petition at 19 **[Doc. 1-2]**; CM/ECF page 11).

     54.  In denying this claim on state habeas review, Judge Butkus noted that "Judge Knowles heard all the trial evidence as well as arguments and presentations at hearings outside actual trial." (Order #1 at 20). Judge Butkus further noted that some of the information listed above is contained in the Pre-Sentence Report ("PSR") that was considered by Judge Knowles at sentencing. In any event, Judge Butkus concluded that Petitioner was not prejudiced, because he "received a lesser sentence than he could have received and a lesser sentence than was requested by the State." (Order #1 at 20).

     55.  Petitioner fails to show that the state court erred in denying this claim. "The Tenth Circuit has noted that a petitioner's Eighth Amendment due process or equal protection rights are not violated when a trial court does not consider mitigating factors during sentencing in a noncapital case." Higgins v. Addison, 2010 WL 1329924, at *13 n.6 (N.D.Okla. Mar. 30, 2010) (citing Scrivner v. Tansy, 68 F.3d 1234, 1240 (10th Cir. 1995) (other citation omitted)) (concluding that "petitioner's trial counsel did not perform deficiently in failing to present mitigation evidence at sentencing"). Accordingly, this Court concludes that Petitioner's claim on this ground should be denied.

*(18)    failure to preserve appellate issues*

56.  Petitioner contends that his trial counsel was ineffective for failing to "to raise her own conflict of interest and ineffective assistance of counsel at trial." (Attachment "B" to Petition at 19 **[Doc. 1-2]**; CM/ECF page 11). In summarily rejecting this claim on state habeas review, Judge Butkus noted that Petitioner "fails to identify any specific issues." (Order #1 at 20). This Court agrees with the state habeas court's determination. Petitioner's conclusory and speculative allegations are insufficient to support a claim on ineffective assistance on this basis. Moreover, to the extent that counsel did not render ineffective assistance at trial, there is no error in failing to raise that issue on appeal. Accordingly, Petitioner's claim for habeas relief on this basis should be denied.

*(19)    cumulative impact of ineffective assistance*

57.  Petitioner apparently alleges that the cumulative impact of trial counsel's errors constitute ineffective assistance. The state habeas court rejected this argument "[g]iven the Court's prior determinations." (Order #1 at 20). This Court similarly concludes that in light of the record and the findings set forth herein, Petitioner has neither demonstrated deficiency of trial counsel nor "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland, 466 U.S. at 694. Therefore, this claim should be dismissed.

*(20)    fundamental error*

58.  Petitioner apparently alleges that his trial counsel's conduct constitutes "fundamental error." (Attachment "B" to Petition at 20 **[Doc. 1-2]**; CM/ECF page 12). In denying this claim, Judge Butkus found that "fundamental error analysis is only available in extremely limited circumstances which do not appear to exist in the present case." (Order #1 at 20-21). This Court

22

also finds that Petitioner's conclusory and speculative allegations are insufficient to support a

claim on this basis.  Thus, Petitioner's claim for relief on this ground should be denied.

*(21)   right to evidentiary hearing*

59.  Petitioner apparently seeks an evidentiary hearing on his claim of ineffective

assistance of trial counsel.  In denying this request, Judge Butkus found that Petitioner "has [not]

made a prima facie showing in support of ineffective assistance of counsel."  (Order #1 at 21).

Moreover, because the claims asserted in Mr. Newsome's Petition were denied on the merits in

state court, this Court "is limited to the record that was before the state court that adjudicated the

claim on the merits." Pinholster, 131 S.Ct. at 1398.[8]  Thus, to the extent that Petitioner seeks an

evidentiary hearing in this Court, his request should be denied.

*III - Claim of ineffective assistance of counsel on appeal*

60.  Petitioner asserts a voluminous number of grounds in support of his allegation that

he received ineffective assistance of appellate counsel.  Petitioner lists the following general

categories of claims; each category contains numerous sub-claims:

> (a) fabricated docketing statement; (b) cumulative impact of ineffective assistance
> of counsel at trial - failure to raise contentions as instructed; (c) appellate counsel failed
> to challenge deprivation of Mr. Newsome's Sixth Amendment right to "counsel of
> choice"; (d) appellate counsel did not raise the issue of trial counsel Brusuela's conflict
> of interest; (e) appellate counsel failed to argue the admission of the highly inflammatory
> "911" tape; (f) appellate counsel made numerous errors in the docketing statement; (g)
> appellate counsel failed to raise the issue of "provocation" in self-defense cases; (h) the
> assistant appellate defender was ineffective in conveying Mr. Newsome's instructions
> about the appeal to replacement contract counsel, with special emphasis on contract
> counsel's duty to engage in "advance consultation" with Mr. Newsome prior to taking
> any action; (i) appellate counsel stated he had "spoken" with contract counsel about the
> issues in the case; (j) contract appellate counsel informed Mr. Newsome merely that she
> would incorporate defendant's requested contentions in her Opposition Memorandum

---

[8]"[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review." Pinholster, 131 S.Ct. at 1400.

"where possible"; (k) on 9-15-05, contract appellate counsel filed "Appellant's First Memorandum in Opposition to Proposed Summary Affirmance" without advance input or consultation with Mr. Newsome; and (l) contract appellate counsel refused to perfect Mr. Newsome's rights on direct appeal.

(Attachment "C" to Petition at 1-6 **[Doc. 1-2]**; CM/ECF page 13-18).

61.   In denying this claim on state habeas review, Judge Butkus found that Petitioner's arguments "are essentially conclusory, self-serving and lacking in actual evidence."  (Order #1 at 22).  Judge Butkus also observed that despite Petitioner's apparent belief "that the purpose of appointed counsel is to blindly do whatever Newsome wants counsel to do[,] . . . . [t]his is not the role of counsel, appointed or retained."  (Order #1 at 22).  Judge Butkus further explained that "the failure to raise a non-meritorious issue [on appeal], being non-prejudicial, can never give rise to a valid ineffective assistance of [appellate] counsel claim."  (Order #1 at 23).  Judge Butkus found that, despite Petitioner's allegation to the contrary, appellate counsel Kerr did attempt to raise the issue of "trial counsel's conflict of interest" on direct appeal.  (Order #1 at 24).  The state habeas court concluded that Petitioner "has not made a sufficient showing of prejudice" regarding his claim of ineffective assistance of appellate counsel.  (Order #1 at 24).

62.   "To sustain a claim of ineffectiveness of appellate counsel, that counsel's representation must fall below an objective standard of reasonableness."  DeLozier v. Sirmons, 531 F.3d 1306, 1331 (10th Cir. 2008) (citations and internal quotation marks omitted).  While such a claim may be based "on counsel's failure to raise a particular issue on appeal . . . it is difficult to show deficient performance under those circumstances because counsel need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  DeLozier, 531 F.3d at 1331 (citations and internal quotation marks omitted).  Moreover, "if the issue is meritless, its omission will not

24

constitute deficient performance."  Id.

63.  This Court agrees that much of Petitioner's claim of ineffective assistance of appellate counsel consists of conclusory and speculative allegations lacking factual support.  To the extent that Petitioner's claim of ineffective assistance of trial counsel lacks merit, the failure to raise such a claim on appeal cannot constitute ineffective assistance of appellate counsel. Petitioner does not demonstrate that the state habeas court's rejection of his ineffective assistance of appellate counsel claim was either contrary to, or an unreasonable application of, clearly established Federal law.  Finally, this Court concludes that Petitioner's claim lacks merit whether AEDPA deference applies, or whether the claim is considered *de novo*.  Accordingly, Petitioner's claim for habeas relief on this ground should be denied.

### IV - *Claim of prosecutorial misconduct*

64.  Petitioner contends that he is entitled to habeas relief based on prosecutorial misconduct, and sets forth the alleged misconduct in eight (8) general categories: (a) failure to disclose evidence prior to trial; (b) failure to disclose material exculpatory evidence; (c) failure to preserve critical evidence; (d) misconduct in opening statement; (e) misconduct in closing argument; (f) willful refusal to comply with the "6-month rule" which prejudiced Mr. Newsome's right to a "speedy trial"; (g) failed to appoint a special prosecutor to handle this case, despite the District Attorney's office's long-standing public vendetta against Mr. Newsome; and (h) cumulative effect of prosecutorial misconduct. (Attachment "D" to Petition at 1-6 **[Doc. 1-2]**; CM/ECF page 13-18).

65.  "In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process."  Malicoat v. Mullin, 426 F.3d 1241, 1255 (10th Cir. 2005) (citing Darden v. Wainwright, 477 U.S. 168 (1986)).  In order to be entitled to relief, Mr. Newsome

"must establish that the prosecutor's conduct or remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process." Malicoat, 426 F.3d at 1255 (citation and internal quotation marks omitted). "Not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation." Moore v. Gibson, 195 F.3d 1152, 1171 (10th Cir. 1999) (citing Caldwell v. Mississippi, 472 U.S. 320, 338 (1985)).

66.  In denying this claim on the merits, the state habeas court found Petitioner's allegations to be "[l]argely conclusory and argumentative." (Order #1 at 26-27). The state court also determined that Petitioner's allegations failed to "ma[k]e a sufficient showing of prejudice." (Order #1 at 26). Thus, Judge Butkus apparently concluded that even if the prosecutor acted improperly, there was not a reasonable probability that the outcome would have been different absent the alleged misconduct.

67.  This Court similarly finds that many of Petitioner's allegations are conclusory and unsubstantiated. Moreover, some of the specific issues raised by Petitioner in this claim (e.g., regarding evidentiary matters, violation of "speedy trial" right, etc.) have been addressed in other sections of the state court's and this Court's decisions.[9] Petitioner fails to demonstrate that the state habeas court's rejection of his claim of prosecutorial misconduct was either contrary to, or an unreasonable application of, clearly established Federal law. Accordingly, Petitioner's claim for habeas relief on this ground should be denied.

*V - Claim of a fair trial based on judicial abuse of discretion*

68.  Petitioner alleges that "[t]he trial court allowed the prosecution to arouse the jury's

---

[9]Petitioner's claims do not justify habeas relief to the extent they raise issues of state law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Wilson v. Corcoran, 131 S.Ct. 13, 16 (2010) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)) (internal quotation marks omitted).

passions against Mr. Newsome by bludgeoning them with his 'socio-economic <u>status</u>' as a homeless person." (Attachment "E" to Petition at 1 **[Doc. 1-2]**; CM/ECF page 23 (emphasis in original)). Petitioner apparently argues that the trial court abused its discretion in allowing the prosecutor to engage in prosecutorial misconduct.

69. The state habeas court determined that Petitioner "has not made a sufficient showing in support of this argument . . . . [and] has not made a sufficient showing of prejudice." (Order #1 at 27). This Court concludes that because Petitioner failed to meet his burden of demonstrating prosecutorial misconduct, his claim that the trial court abused its discretion in permitting such misconduct must necessarily fail. Accordingly, Petitioner's claim for habeas relief on this ground should be denied.

### Recommendation

The Court respectfully recommends that all of the claims raised in Mr. Newsome's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody **[Doc. 1]** be **dismissed** with prejudice. The Court further recommends that, after dismissing all of Mr. Newsome's claims, his Petition **[Doc. 1]** be **denied** and this civil proceeding be **dismissed**.

Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

Robert Hayes Scott
_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE